**UNITED STATES of America**

v.

**Morris Joseph KESSLER, Joseph Kinsella, Emanuel George Castellitto and John Helmer Torta, Defendants.**

**Cr. No. 44743.**

United States District Court
E. D. New York.
June 24, 1957.

Leonard P. Moore, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., for the United States. Peter E. DeBlasio, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Edward Halle, New York City, for defendant Morris Joseph Kessler.

Gerald Adler, Brooklyn, N. Y., for defendant John Helmer Torta.

BRUCHHAUSEN, District Judge.

The defendants, Morris Joseph Kessler, Joseph Kinsella, Emanuel George Castellitto and John Helmer Torta were indicted on two counts, in substance, as follows:

Count one: That on or about April 12, 1956, the defendants transported from the Reliable Warehouse in New Jersey to Brooklyn, property of Reynolds Aluminum Company, consisting of eight skids of sheet aluminum, valued at more than $5,000, knowing same to have been stolen, in violation of 18 U.S.C. Sections 2 and 2314.

Count two: That on or about and between the first day of February, 1956 and the 18th day of April, 1956, the said four defendants, in this district, conspired to transport merchandise valued at more than $5,000 from New Jersey to Brooklyn, knowing the same to have been stolen, in violation of 18 U.S.C. Section 371.

The defendants Kinsella and Castellitto pleaded guilty. The defendants Kessler and Torta waived trial by jury. The trial was held before the undersigned on April 10 and 11, 1957.

The principal defense is that the testimony of the Government's witness, Edgar Robbins, as to the contents of records, not produced, was not competent. The Court has not found it necessary to consider this evidence in its determination of the case. Other contentions of the defendants are that the prosecution failed to establish the identity of the merchandise and that it was taken without the consent of the owner.

The Government's witnesses are identified as follows:

Edgar Robbins, an official of The Reynolds Company,

Joseph L. Kinsella, employed as a checker at the Reliable Warehouse in Newark, New Jersey, which was under lease to The Reynolds Company,

James Coles, a truck driver, engaged by the defendants Kessler and Torta to transport aluminum from the Reliable Warehouse to a warehouse in Brooklyn,

Burton Lewis, manager of The Brooklyn Steel Warehouse Company,

Abraham Ackerman, purchaser of the aluminum,

James O. Ponder and Edward T. Kelly, Special Agents of the Federal Bureau of Investigation, and

Robert E. Arnold, a representative of The New York Telephone Company.

The witness Robbins, an official of The Reynolds Company, testified that the Company leased the Reliable Warehouse in Newark, New Jersey (12); that all of the merchandise in the Warehouse was the property of the Company (26, 36); that on April 17, 1956 (five days after the alleged theft), he identified the 8 skids of aluminum, found in The Brooklyn Steel Warehouse, as aluminum, manufactured by The Reynolds Company (5, 6); that on or about April 30, 1956, an inventory taken at the Reliable Warehouse disclosed that more than 18 skids were missing (36); that he has kept himself informed of the market value of aluminum and that the retail price of the 8 skids exceeded the sum of $10,000 (18, 19).

The witness Kinsella, the checker at the Reliable Warehouse, testified as to the removal of a load of aluminum in the early part of March 1956; that in the latter part of February 1956 he conferred with the defendant Castellitto about stealing a load of aluminum from the Warehouse and splitting the proceeds of sale between them (47, 48); that they again conferred about it early in March

1956 (49); that a few days later the witness telephoned Castellitto to bring a truck in (50); that on that same day the defendants Castellitto and Torta arrived at the Warehouse with a trailer truck (50); that six skids were put on the truck (55); that Castellitto told the witness he would telephone him about his cut (56); that a few days later Castellitto paid the witness $550 for his share of the sale of, the skids (57).

The witness Kinsella testified as to a second transaction, stating that on April 11, 1956 he telephoned Castellitto that he had another load of skids; that Castellitto said he would send Torta for it (57, 58); that later that day the latter, accompanied by a colored man, came to the Reliable Warehouse in a truck (59); that the witness told Torta to cut off the labels because he didn't want anyone to know where the stuff came from (60); that the witness burned the tags; that 8 skids were loaded on the truck (61); that, after they left, the witness telephoned Castellitto, telling him the truck had left; that Castellitto told the witness to telephone him in a few days as to his share of the sale (62); that on April 18, 1956, Castellitto paid the witness $1400; that the witness was shown a photograph (Exhibit 1) of the skids later found at the Brooklyn Warehouse and stated that they looked the same as those removed from the Reliable Warehouse (64).

The witness, James Coles, a colored man, testified that on April 11, 1956, the defendants Torta and Kessler employed him to use his truck to transport a load from Newark to Brooklyn (87); that Kessler then left and Torta directed the witness to drive his truck to a warehouse in Newark (88); that, at the warehouse, was a man who looked very much like the witness Kinsella (90); that skids of metal were loaded on the truck (91); that he saw Torta taking the tickets off of them (92); that Torta said they would see his boss, Kessler, in Brooklyn, the following morning; that on that morning, April 12, the witness, accompanied by Torta, drove the truck to the Brooklyn Steel Warehouse, on Flushing Avenue near Grand Street, in Brooklyn (96); that Kessler was there and directed him to place the truck on the scales for weighing (97) and then to pull over to the warehouse and unload; that the witness asked Kessler what he should write on the ticket and he said Ding Doe Steel Company; that Kessler paid $85 to the witness for his services (99); that he then discovered that the metal on the truck was aluminum (99) and stated that the packages he transported looked very much like those shown on the photograph, Exhibit 1 (105), also that the said ticket he wrote out, Exhibit 4, reads as follows:

"J. Coles Trucking 4–12–56

"8 packages of corrugated Aluminum Sheets transported from Newark, N. J. to Brooklyn, N. Y. Handled for Ding-Do Steel Co., J. E. Coles

"To Brooklyn Steel Warehouse."

The witness, Burton Lewis, manager of The Brooklyn Steel Warehouse, testified, in substance, that he was acquainted with the defendant Kessler (114); that he was known to him as the operator of The Ding Doe Company; that on the morning of April 12, 1956, Kessler appeared at the Warehouse with a truck for unloading; that he believed the driver was a colored man; that he was accompanied by another man; that Kessler said he had a load of aluminum for storage; that it was received for Ding Doe Steel Company (116); that a receipt for it, 8 bundles of aluminum sheets, weighing 21,060 lbs. was issued in the name of Ding Doe Steel Company, which also mentioned that it was shipped via J. Coles, in the latter's truck, bearing license No. 5795, Exhibit 3 and S.M. 118; that under date of April 18, 1956, Ding Doe Steel Company, by Murray Kessler, executed a release of the 8 skids to Abe Ackerman, Exhibit 6 and S.M. 118; that a non-negotiable receipt for the 8 skids was issued to Abe Ackerman, Exhibit 7.

Abraham Ackerman testified that he purchased the aluminum for $5,659.54 and that he dealt with Langer and Kessler, Exhibit 8 and S.M. 125.

Edward T. Kelly testified that a paper was found in the defendant Kessler's possession with the name "Red" and telephone number Journal Square 2–7725 written on it (149–151). According to other testimony the defendant Torta is called "Red" and the said number corresponds with his home telephone number.

The Court was impressed with the truthfulness of all of the witnesses and accepts it as an accurate presentation of the matters alluded to. The charges were proved beyond a reasonable doubt including the taking of the skids from the Reliable Warehouse in Newark, their transportation to the Brooklyn Warehouse, their appropriation and sale by Kessler, their valuation at more than $10,000; and not only that the defendants, Kessler and Torta actively participated in the theft and transportation of the merchandise, but that they removed or were aware of the removal of the tags and had no documents evidencing ownership of the skids.

The defendants' motions are denied.

The defendant, Morris Joseph Kessler, is found guilty of the crimes, alleged in Counts one and two of the indictment.

The defendant, John Helmer Torta, is found guilty of the crimes, alleged in Counts one and two of the indictment.